UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ISAAC COLLIER, JR.,

        Plaintiff,                        Case No. 1:25-cv-80

v.                                           Honorable Robert J. Jonker

UNKNOWN NIGORNI et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff may proceed *in forma pauperis* in this action. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Cashman, Heisey, and McLaren Greater Lansing Hospital. Plaintiff's Eighth Amendment claims against Defendants Nigorni and Wuest remain in the case.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Nurse Unknown Nigorni and Dr. Unknown Wuest, who were both employed at DRF, in their official and personal capacities. Plaintiff also sues Surgeon Dr. M. C. Heisey, who was employed at the Michigan Orthopedic Center affiliated with McLaren Greater Lansing Hospital, in her official and personal capacities. Finally, Plaintiff sues Defendant Dr. Unknown Cashman, who is employed at DRF, in her official capacity and McLaren Greater Lansing Hospital.

Plaintiff alleges that during an altercation on February 8, 2023, his leg was displaced, and he could not ambulate. (ECF No. 1, PageID.3.) A stretcher was brought from healthcare and Defendant Nigorni briefly examined Plaintiff before he was taken to healthcare. Corrections Officers prepared Plaintiff to go offsite by ambulance for emergency care because they could see that his leg was dangling from the hip and that Plaintiff was excruciating pain. (*Id.*) However, because Defendant Nigorni did not communicate Plaintiff's true status to emergency services, they sent Plaintiff back to the housing unit in a wheelchair with no pain meds. (*Id.*)

The following morning, Plaintiff asked to see Defendant Wuest because of his pain and inability to ambulate or perform bodily functions. (*Id.*) Defendant Wuest was accompanied by the Corrections Officer who was assigned to the segregation bubble. On February 9, 2023. Plaintiff told Defendant Wuest that he was in extreme pain and could not ambulate, but Defendant Wuest called Plaintiff a liar and began berating him. She then approached Plaintiff while he was in a wheelchair and started jabbing his leg while she continued to accuse Plaintiff of lying. (*Id.*)

Defendant Wuest then sent Plaintiff back to his cell, where Plaintiff had to sleep in his chair and was unable to get up to go to the bathroom. (*Id.*)

On February 10, 2023, Officer Gador saw that Plaintiff was unable to relieve himself or to ambulate and asked health care to x-ray Plaintiff. At this point, it was discovered that Plaintiff's femur was broken. (*Id.*) Plaintiff was sent to the McLaren Greater Lansing Hospital that evening where he was operated on and screws were placed in his femur by Defendant Heisey. (*Id.*, PageID.3–4.) Plaintiff was not given a rehabilitation detail and was sent back to segregation at DRF. (*Id.*, PageID.4.)

Approximately one month later, on March 13, 2023, Plaintiff was seen for his post-op review by Defendant Heisey who stated that there had been no change in Plaintiff's leg from the previous x-ray. (*Id.*) Defendant Heisey made the same findings at Plaintiff's visit on June 21, 2023. (*Id.*) Plaintiff remained in pain and continued to complain to health services. (*Id.*)

On September 10, 2024, it was discovered that there was a broken screw in Plaintiff's hip. (*Id.*) Plaintiff states that Defendant Cashman did not send him to rehab although staff at McLaren told Plaintiff that he would be going to rehab. (*Id.*) Plaintiff states that Defendant Cashman was in charge at DRF Health Services. (*Id.*) Plaintiff claims that CAT scans show that his bone has not healed but is merely being held together by screws and a rod. Plaintiff further asserts that he is in pain on a daily basis but has not received any help with his continuing medical issues. (*Id.*)

Plaintiff does not specify what relief he is seeking but merely states that he is seeking a jury trial.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Defendants Heisey and McLaren Greater Lansing Hospital

The Court notes that McLaren Greater Lansing Hospital is a privately owned acute care non-profit hospital.[1] Defendant Heisey is an orthopedist who is affiliated with McLaren Greater Lansing Hospital.[2] Plaintiff has not presented any allegations by which the conduct of either of these Defendants could be fairly attributed to the State. The fact that Defendant McLaren Greater Lansing Hospital may receive public funding and that both the hospital and the doctor are licensed by the state does not render them "state actors" for purposes of § 1983. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (nonprofit, privately operated school's receipt of public funds did not make its employee discharge decisions acts of state subject to suit under federal statute governing civil action for deprivation of rights); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (allegation that hospital and social worker were subject to state licensing was insufficient to support finding that defendants were acting under color of state law); *Adams v. Vandemark*, 855 F.2d 312, 315–16 (6th Cir. 1988) (fact that nonprofit corporation was funded almost entirely by public sources, and was subject to state regulation, without more, is insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action). Further, even if Defendants treated Petitioner at the state's request and expense, they did not thereby become state actors. *See Rendell-Baker*, 457 U.S. at 841 ("[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts"); *Bell v. Mgmt. and Training Corp.*, 122 F. App'x 219, 223 (6th Cir. 2005) (private company operating state corrections facilities is not a state actor). Therefore,

---

[1] *See* Hospital Care Data, https://hospitalcaredata.com/facility/mclaren-greater-lansing-lansing-mi-48910 (last visited Feb. 19, 2025).

[2] *See* U.S. News and World Report Health, https://health.usnews.com/doctors/meredith-heisey-605585 (last visited Feb. 19, 2025).

Plaintiff fails to state a § 1983 claim against Defendants Heisey and McLaren Greater Lansing Hospital.

### B. Eighth Amendment claims against Defendants Nigorni, Wuest, and Cashman

Plaintiff's complaint fails to set forth any specific claims or request any specific relief. However, the Court construes Plaintiff's complaint as asserting Eighth Amendment claims against Defendants. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v.*

6

*Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

7

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466

F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Defendants Nigorni and Wuest

Plaintiff alleges that Defendant Nigorni briefly examined him following his accident on February 8, 2023. Corrections Officers prepared Plaintiff to go offsite by ambulance for emergency care because they could see that his leg was dangling from the hip, and that Plaintiff was in excruciating pain. (ECF No. 1, PageID.3.) However, because Defendant Nigorni did not communicate Plaintiff's true status to emergency services, they sent Plaintiff back to the housing unit in a wheelchair with no pain meds. (*Id.*) When Defendant Wuest saw Plaintiff the next morning, he told her that he was in extreme pain and could not ambulate, but Defendant Wuest called Plaintiff a liar and began to berate him. Defendant Wuest then approached Plaintiff while he was in a wheelchair and started jabbing his leg while she continued to accuse Plaintiff of lying. (*Id.*) Defendant Wuest then sent Plaintiff back to his cell, where Plaintiff had to sleep in his chair and was unable to get up to go to the bathroom. (*Id.*) Plaintiff finally received an x-ray on February 10, 2023, after non-party Officer Gador saw that Plaintiff was unable to relieve himself or to

ambulate and contacted health services to ask that Plaintiff be x-rayed. At this point, it was discovered that Plaintiff's femur was broken, and he was sent to the hospital. (*Id.*, PageID.3–4.)

Plaintiff asserts that the conduct of Defendants Nigorni and Wuest resulted in his broken femur being untreated for two days while he was in extreme pain and could not ambulate or take care of his bodily functions. Plaintiff also alleges that his need for medical attention was obvious to non-medical staff at the prison. The Court concludes that at this stage in the litigation, Plaintiff has alleged sufficient facts to avoid dismissal of his Eighth Amendment claims against Defendants Nigorni and Wuest.

### 2. Defendant Cashman

Plaintiff's only allegation against Defendant Cashman is that after it was discovered that there was a broken screw in Plaintiff's hip on September 10, 2024, Defendant Cashman failed to send Plaintiff to rehab even though staff at McLaren had told Plaintiff that he would be going to rehab. (ECF No. 1, PageID.4.) However, Plaintiff fails to allege facts showing that rehab was necessary to treat the broken screw, or even beneficial. Nor does Plaintiff allege that the failure to refer him to rehab services had any impact on his medical condition. Plaintiff does not allege that Defendant Cashman denied him other treatment or ignored a serious medical need. Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendant Cashman.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Cashman, Heisey, and McLaren Greater Lansing Hospital will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Nigorni and Wuest remain in the case.

An order consistent with this opinion will be entered.

Dated:  February 28, 2025                    /s/ Robert J. Jonker
                                                                                    Robert J. Jonker
                                                                                   United States District Judge