UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ISAAC COLLIER, Jr., #242207,

        Plaintiff,

v.

UNKNOWN NIGORNI, et al.,

        Defendants.
_____/

Case No. 1:25-cv-80

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R. & R.) addresses Defendant Nagorny's[1] motion for summary judgment on the basis of exhaustion and Plaintiff's response in opposition. (ECF Nos. 19, 21.)

Plaintiff − State prisoner Isaac Collier, Jr. − filed a complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights while he was incarcerated at Carson City Correctional Facility (DRF). (ECF No. 1.) Plaintiff sued Nurse Unknown Nagorny and Dr. Unknown Wuest, who were both employed at DRF, in their official and personal capacities. Plaintiff also sued Surgeon Dr. M. C. Heisey in her official and personal capacities. Dr. Heisey was employed at the Michigan

---

[1] Plaintiff refers to the Defendant as "Nigorni." (ECF No. 1, PageID.2.) However, in her motion for summary judgment, the Defendant refers to herself as "Nagorny." (ECF No. 19.) The undersigned shall refer to the Defendant by her preferred spelling of her name: "Nagorny."

Orthopedic Center, which is affiliated with McLaren Greater Lansing Hospital. Plaintiff also sued Defendant Dr. Unknown Cashman, who is employed at DRF, in her official capacity, and the McLaren Greater Lansing Hospital.

On February 28, 2025, the Court issued a screening opinion in the case. (ECF No. 5.) The Court dismissed Defendants Cashman, Heisey, and McLaren Greater Lansing Hospital for failure to state a claim. (*Id.*, PageID.64.) Following the screening opinion, only Plaintiff's Eighth Amendment claims against Defendants Nagorny and Wuest remain in the case. (*Id.*)

On June 23, 2025, Defendant Nagorny moved for summary judgment on the basis of exhaustion. (ECF No. 19.) The Defendant argues that Collier failed to exhaust his administrative remedies through his singular relevant grievance because he failed to name or identify her in his Step I grievance, which was subsequently rejected during the grievance process. (ECF No. 20, PageID.265.)

In the opinion of the undersigned, there exists no genuine dispute of material fact as to whether Collier properly exhausted his administrative remedies; the record before the Court demonstrates that he did not. Therefore, it is respectfully recommended that that Court grant the Defendant's motion for summary judgment.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly,

---

[2] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). However, when the exhaustion issue is intertwined with the merits of a claim, the Seventh Amendment requires a jury trial on the exhaustion issue. *Richards v. Perttu*, __ U.S. __, 2025 WL 1698783 (June 18, 2025).

summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218−19; *Woodford v. Ngo*, 548 U.S. 81, 90−91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.*, ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.*, ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.*, ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues

should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.*, ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.*, ¶ DD. The respondent at Step II is designated by the policy. *Id.*, ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.*, ¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.*, ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.*, ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the

6

grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th

7

Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017).[3]

**IV. Verification**

In ruling on a summary judgment motion, a court must decide whether a genuine issue of material fact remains. Fed. R. Civ. P. 56(a). The materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c). Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992)). To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746. *Id.* In contrast, complaints that are unverified are not considered Rule 56 evidence. *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

8

(W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019).

The undersigned recognizes that *pro se* plaintiffs, like Collier, are held to a less stringent pleading standard than parties represented by an attorney. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). At the summary judgment stage, *pro se* plaintiffs are thus not held to the same technical requirements as represented parties. Still, *pro se* plaintiffs must use common sense in demonstrating there exists a genuine issue of material fact.

A review of the record indicates that Collier's complaint and response lack declarations of veracity as called for in 28 U.S.C. § 1746. (ECF No. 1; ECF No. 21.) As such, neither his complaint nor his response constitute evidence for Rule 56(c) purposes.

## V. Grievance Identified

In her motion for summary judgment, Nagorny provided Collier's Step III Grievance Report. (ECF No. 20-3.) The affidavit included with the report states that it "is taken from the Michigan Department of Corrections' (MDOC) database that tracks all prisoner/parolee grievances filed at Step II, which have been responded to at Step III." (*Id.*, PageID.279.) The Defendant identifies one grievance as potentially relevant to the complaint: DRF-23-07-1747-28E (DRF-1747). (*Id.*, PageID.281.) Collier's Grievance Report is shown below:



| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/8/2023 | DRF-23-07-1747-28E | 28E | 5 | 7/18/2023 | ☐ | ☐ | ☐ | ☑ | ☑ | 11/14/2023 |

MDOC Prisoner Step III Grievance Report
1/1/2019 to Present
Prisoner #: 242207   Last Name: Collier   First Name: Isaac

(*Id.*)

## V. Analysis

In her motion for summary judgment, Nagorny argues Collier failed to properly exhaust his administrative remedies through DRF-1747 because the grievance was rejected as untimely at Step I. (ECF No. 20, PageID.264–65.) Collier responds (1) that Nagorny failed to identify a grievance he filed upon his return from the hospital on February 12, 2023, (2) that he was thwarted and prevented from exhausting that grievance, (3) that DRF-1747 identified by the Defendant was wrongly rejected as untimely, and (4) that he was prevented from timely filing his grievance by the Grievance Coordinator. (ECF No. 21.)

### A. Unidentified Grievance

Collier states that Defendant Nagorny fails to identify a grievance he filed after his return from the hospital on February 12, 2023. (*Id.*, PageID.288.) Defendant Nargorny did not reply to Plaintiff's assertion.

Collier states that when he returned from the hospital, he was placed in segregation. (*Id.*) While he was in segregation, Collier states that he completed a grievance form and submitted it "to one of the Corrections Officer in the Segregation

10

unit." (*Id.*)  Collier states that he "never received any response, or identification number for the grievance." (*Id.*)

When he was removed from segregation, Collier says that he was placed in a Level IV unit because there were no Level II beds available. (*Id.*, PageID.289.)  While he was there, Collier says he wrote "a number of correspondents [sic] to the grievance coordinator, who refused to respond back." (*Id.*)

Collier says he was transferred to Chippewa Correctional Facility. (*Id.*)  Collier states that at Chippewa, he filed the grievance attached to the Defendant's motion for summary judgment, DRF-1747. (*Id.*)

Ultimately, the purpose of the grievance system is to alert prison officials to problems within their facilities.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).  To provide adequate notice to officials through the grievance process, the grievant must provide facts underlying the issue being grieved including the "names of all those involved" at Step I.  PD 03.02.130 ¶ S.  When a grievance identifies specific individuals at Step I, exhaustion is limited to those specific individuals.  *Reed-Bey*, 603 F.3d at 324; *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019).  Issues within the scope of review at Step II and Step III appeals are limited to those issues addressed on the merits at each step of the grievance process.  PD 03.02.130 ¶ S; *Brown*, 2019 WL 5436159, at *3.

However, a prisoner need only exhaust *available* administrative processes.  *Ross,* 578 U.S. at 638.  In three rare circumstances, the grievance process will be considered unavailable to prisoners.  This occurs (1) where officers are unable or

consistently unwilling to provide relief, (2) where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate them, or (3) "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. For an inmate to successfully claim that the grievance process was not "capable of use," they must claim that they hit a "dead end" in the grievance process—not merely that they failed to consider other options. *Booth,* 532 U.S. at 738; *Ratliff v. Graves*, 761 Fed.Appx. 565, 567 (6th Cir. 2019).

In the opinion of the undersigned, there remains no genuine dispute of material fact as to whether Collier properly exhausted his administrative remedies through this unidentified grievance. While Collier alleges he was thwarted and was prevented from filing grievances, he fails to do so in a verified filing. Collier alleges the existence of the grievance in his unverified response to the Defendant's motion, which may not be considered Rule 56(c) evidence. Collier does not present any evidence documenting his attempts to contact the grievance coordinator. Even if Collier's response was verified, he fails to state that he named Nagorny at Step I of the alleged grievance or that the grievance concerned her actions relevant to this complaint. Thus, Collier has failed to properly exhaust his administrative remedies through this unidentified grievance.

### B. DRF-1747

At Step I of DRF-1747, Collier stated that the date of the incident was February 8, 2023 and noted that he was writing the grievance on July 2, 2023.

(ECF No. 20-3, PageID.287.)  Collier says that his leg was broken in an "altercation" and that staff prepared him to be taken to the emergency room.  (*Id.*, PageID.286.)  Nurse Nagorny contacted the hospital and "downplayed" the severity of the Plaintiff's injury and extent of his pain.  (*Id.*)  Her description of his condition "led to a decision of them not sending [Collier] to the emergency room."  (*Id.*)  Collier was given ibuprofen and sent to his cell.  (*Id.*)  Collier also grieves Dr. Wuest for her conduct on February 9, 2023, and Dr. Cashman for their conduct on February 10, 2023.  (*Id.*)  Collier's Step I was received by the Grievance Coordinator on July 18, 2023.  (*Id.*, PageID.284.)  DRF-1747 was rejected as untimely at Step I on August 3, 2023.  (*Id.*, PageID.287.)

At Step II, Collier stated he was appealing because "no attempt was made to solve my Step I grievance dated 7-2-23." (*Id.*, PageID.283.)  At Step II, the rejection was upheld.  (*Id.*, PageID.284.)  The Respondent explained that the "Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff." (*Id.*)  At Step III, Collier stated "no attempt was made to resolve my issue at Step II." (*Id.*, PageID.283.)  The rejection was upheld at Step III.  (*Id.*, PageID.282.)

"[P]roper exhaustion" requires that the plaintiff comply with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances.  *Woodford*, 548 U.S. at 90−95.  MDOC policy provides that a grievance shall be rejected if filed in an untimely manner.  PD 03.02.130 ¶ (J)(5).  Grievances are considered filed on the date they are received by the Department and

13

must be stamped as such. *Id.*, ¶ T. When filing a Step I grievance, inmates must attempt to resolve the issue with the relevant staff member within two business days of the relevant events. *Id.*, ¶ Q. To be considered timely, a Step I grievance must be filed within five business days of their attempt to resolve the issue with staff. *Id.*, ¶ W. Step II appeals must be received by the Grievance Coordinator within ten business days after the grievant received a Step I response or, if no response is received, within ten business days after the date the response was due. *Id.*, ¶ EE.

In DRF-1747, Collier grieved incidents that occurred on February 8 through February 10, 2023. (ECF No. 20-3, PageID.287.) Collier filed the grievance on July 2, 2023, nearly five months after the relevant events occurred. (*Id.*, PageID.285.) The Respondent rejected DRF-1747 at Step I for being untimely. (*Id.*)

Here, Collier argues that DRF-1747 should not have been rejected as untimely because of his transfer from DRF to the hospital, the hospital back to DRF, and finally from DRF to Chippewa Correctional Facility. (ECF No. 21, PageID.289–90.) Collier argues that he should have been granted at least a 15-day extension of the grievance deadline due to these transfers. (*Id.*)

At Step II and Step III, the rejection based on timeliness was upheld. (ECF No. 20-3, PageID.282–84.) While Collier did appeal at Step II and Step III, he did not raise the issue of thwarting or argue his grievance should have been timely at either step. (*Id.*) Collier did not mention the alleged delay in his filing caused by either his transfers or the inaction of the grievance coordinator at DRF. (*Id.*) Collier said only that "no attempt was made to solve my Step I grievance." (*Id.*, PageID.283.)

14

In the opinion of the undersigned, Collier has failed to properly exhaust his administrative remedies through DRF-1747. Although Collier did grieve the Defendant and the relevant events at Step I, he failed to do so in a timely manner. Collier states in his response to the Defendant's motion that he attempted to grieve the issue sooner, but there is no evidence to suggest that he did so. DRF-1747 was rejected at Step I and that rejection was upheld at each step in the grievance process. DRF-1747 was not evaluated on the merits at any stage. Collier's unverified allegations of thwarting in his response fail to create a genuine issue of material fact.

## VI. Recommendation

The undersigned respectfully recommends that this Court **grant** Defendant Nagorny's motion for summary judgment on the basis of exhaustion and dismiss her from the case.

Dated:  July 25, 2025                               /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).